Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The employer-employee relationship existed at the time of the alleged injury by accident of June 3, 1997.
2. The employer is subject to the Workers' Compensation Act.
3. Peerless Insurance Company was the carrier on the risk at the time of the alleged injury.
4. Plaintiff's average weekly wage at the time of the alleged injury was $327.04, yielding a compensation rate of $218.03.
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. Plaintiff was employed as a curtain coat operator for the silver line at Stroupe Mirror Company. At about 6:00 a.m. on Tuesday, June 3, 1997, plaintiff sustained an injury by accident arising out of and in the course of his employment when the wheel of a loaded hand cart he was pushing containing a fifty-five gallon drum of paint became caught in a hole in the floor and pulled him forward and caused him to feel immediate pain in his back and right leg.
2. At the hearing, plaintiff testified that a co-worker, Willie Gaskins, was present and standing about five to six feet away from the hole in the floor when the incident occurred. Plaintiff was unsure whether Mr. Gaskins saw the incident. Mr. Gaskins testified that he did not witness any incident and did not hear noise from such incident. Mr. Gaskins further stated that plaintiff did not mention to him any paint drum incident or injury to his back.
3. Shortly after the incident, plaintiff informed his supervisor, Darren Ellis, of his back injury and the incident involving the paint drum. According to plaintiff, later that same day he signed an accident report that Mr. Ellis completed in regard to the paint drum incident.
4. Mr. Ellis, however, testified that plaintiff never informed him of any back injury at work on June 3, 1997. Mr. Ellis was also certain that he never completed any accident report for an alleged incident on June 3, 1997. He testified that at no time was an accident report completed for an injury to plaintiff's back because plaintiff never reported one.
5. Mr. Ellis stated that he first became aware of plaintiff's back problem on June 6, 1997 when plaintiff advised him that his "back was hurting" and that he needed to have his girlfriend make a doctor's appointment for him. Mr. Ellis testified that plaintiff did not tell him that he hurt his back at work.
6. Plaintiff continued to work in his regular capacity from the day of the incident, June 3, 1997 until mid-day June 6, 1997 when plaintiff then presented to a family physician, Dr. Michael J. Kalish, in High Point. At the time of this initial visit to Dr. Kalish's office, plaintiff advised the physician's assistant that he had back and leg pain for a week with "no known injury" and "no previous injury to the back." Plaintiff testified that he did mention the pushing and pulling of the paint cart, but it is not recorded in the medical notes.
7. Dr. Kalish felt plaintiff had a low back strain with radiculopathy, wrote plaintiff out of work, and set up an MRI for June 11, 1997. The MRI revealed a herniated disc at L5-S1. On June 12, 1997 Dr. Kalish telephoned plaintiff and advised him of the MRI findings and referred him to a neurosurgeon.
8. On June 12, 1997 plaintiff came to the workplace to pick up his check and spoke with Kelly Craver, the human resources manager. Plaintiff informed Mr. Craver that he had been referred to a surgeon for a herniated disc and that he might need surgery for his condition. Plaintiff also informed Mr. Craver that he had injured his back at work a couple of weeks earlier. Since that was the first he had heard of any workplace injury, Mr. Craver questioned plaintiff about the incident, but at the time plaintiff could not specifically identify a day, date or time of the incident. Plaintiff told Mr. Craver that Willie Gaskins witnessed the incident and that he had reported his injury to Darren Ellis, who completed an accident report the same day.
9. Shortly thereafter, Mr. Craver spoke to Mr. Gaskins and Mr. Ellis, and learned they claimed no knowledge of any workplace incident, report of injury or accident. Mr. Craver then called plaintiff later on June 12, 1997 to advise him that his medical bills should be filed with the company's group health plan since he could not verify any workplace injury.
10. Plaintiff was seen by Dr. Russell H. Amundson, a neurosurgeon in High Point, on June 16, 1997. On that occasion, plaintiff presented with a history of "pushing a paint cart when a wheel got caught in a hole and his symptoms began." Plaintiff provided a similar history to a physician's assistant when he checked into the hospital for surgery.
11. After his examination, Dr. Amundson's impression was that plaintiff had an S1 radiculopathy and recommended surgical decompression with a diskectomy, which was performed on June 18, 1997. Dr. Amundson released plaintiff to light duty work two months later, and plaintiff did return to work in a light duty capacity on August 25, 1997 earning his full wages. Plaintiff was released to full duty work on September 18, 1997. He reached maximum medical improvement on October 2, 1997. As a result of the injury by accident on June 3, 1997, plaintiff has a fifteen percent (15%) permanent functional impairment to his back.
12. Plaintiff's herniated disc and the resulting surgery were causally related to the injury by accident on June 3, 1997.
13. Considering all the evidence in the record and the demeanor of the witnesses at the hearing, the Commission finds the testimony of the plaintiff credible and gives his testimony greater weight than that of the other witnesses.
14. Plaintiff gave sufficient notice to the employer concerning his injury by accident, and the employer was aware of and had personal knowledge of the accident and proposed medical treatment such that defendants have not been prejudiced.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On June 3, 1997, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer, resulting in a back injury. G.S. § 97-2(6).
2. Plaintiff provided proper notice to defendant-employer of his injury by accident, and the defendant-employer had personal knowledge of said accident and proposed medical treatment soon thereafter, and has not been prejudiced by a lack of written notice from plaintiff. G.S. § 97-22.
3. As a result of his compensable injury on June 3, 1997 plaintiff is entitled to temporary total disability compensation at the rate of $218.03 per week, from June 6, 1997 to August 25, 1997. G.S. § 97-29.
4. As a result of his compensable injury on June 3, 1997, plaintiff has a fifteen percent permanent partial disability of his back, for which he is entitled to compensation at the rate of $218.03 per week, for a period of forty-five weeks. G.S. §97-23.
5. Plaintiff is entitled to payment by defendants of all medical expenses incurred by plaintiff as a result of his compensable injury on June 3, 1997. G.S. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For his temporary total disability compensation, defendants shall pay plaintiff at the rate of $218.03 per week from June 6, 1997 to August 25, 1997. This amount shall be paid in a lump sum, subject to the attorney fee below.
2. For his fifteen percent permanent partial disability of the back, defendants shall pay compensation to plaintiff at the rate of $218.03 per week, for a period of forty-five weeks. Said amount shall be paid to plaintiff in a lump sum, subject to the attorney fee approved in Paragraph 4.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injury on June 3, 1997, when bills for the same have been submitted to the Industrial Commission pursuant to approved Commission procedure.
4. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under Paragraphs 1 and 2 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the lump sums due plaintiff under Paragraphs 1 and 2 of this AWARD shall be deducted from those sums and paid directly to plaintiff's counsel.
This the ___ day of March 1999.
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
S/_____________ CHRISTOPHER SCOTT COMMISSIONER
LKM/bjp